COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JAMES ROBERT ELLIOT,      §

        Appellant,      §

v.      §

THE STATE OF TEXAS,      §

        Appellee.      §

     §

No. 08-13-00035-CR

Appeal from the

432nd District Court

of Tarrant County, Texas

(TC#1289808D)

## **O P I N I O N**

Appellant, James Robert Elliot, appeals his conviction of one count of theft of property of an elderly person, having a value of more than $20,000 and less than $100,000.[1] TEX. PENAL CODE ANN. § 31.03(f) (West 2011). We affirm.

### **BACKGROUND**

Shortly after their marriage, Appellant, his wife, and her two children began living with his wife's grandparents, Earl and Patsy Tow, in Saginaw, Texas.[2] While living with the Tows, Appellant wrote approximately $60,000 worth of fraudulent checks from Patsy's account. When Earl confronted Appellant regarding the fraudulent checks, Appellant admitted to writing them

---

[1] This is a companion case to cause no. 08-13-00034-CR.

[2] As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

and promised to pay back the money if Earl would agree not to involve the authorities. After Appellant and his family moved out of the Tow's home a few weeks later, Appellant returned to collect some belongings. Shortly after Appellant left the house, Earl's bank called and informed him Appellant was there attempting to cash another check on the Tow's account. Earl told the bank not to cash the check.

Appellant returned to the Tow's home and denied to Earl that he had been at the bank or had attempted to cash another check. Appellant then informed Earl that he needed $3,200 to pay a ransom to drug dealers who had kidnapped his wife and her two children. Earl did not believe Appellant's story and denied his request for money. Appellant then pulled a gun and threatened to kill Earl if he did not get down on his knees. Earl refused and Appellant fired a shot to the right of where Earl stood. After Appellant told Earl again to get on his knees, Earl threw coffee in Appellant's face. Appellant fired a second shot, missing Earl again. Earl called 911, which angered Appellant, and the two men wrestled over the gun. A third shot was fired, but missed Earl's leg. During the scuffle, Earl knocked the gun out of Appellant's hand, and as the two continued fighting, Appellant attempted to choke Earl. The police arrived, broke up the fight, and arrested Appellant. Police recovered live .380 shells, spent .380 casings, a .380 handgun from the scene, and ten zip ties from the inside of and lying around Appellant's jacket.

Appellant entered open pleas of guilty to the trial court on one count of aggravated robbery with a deadly weapon in Cause Number 1274489D, and one count of theft of property of an elderly person in Cause Number 1289808D. TEX. PENAL CODE ANN. §§ 29.03(a)(2); 31.03(f) (West 2011). The property stolen in Cause Number 1289808D was valued between $20,000 and $100,000.

2

At the punishment hearing on November 19, 2012, after the State sought a sentence of fifty years, the trial court imposed concurrent thirty-year sentences in both cases, and Appellant filed his notices of appeal that same day.[3]  After reviewing its imposition of sentence, the trial court realized that it had erroneously imposed an improper sentence in excess of the permitted twenty-year maximum punishment for the second-degree theft conviction.  TEX. PENAL CODE ANN. § 12.33 (West 2011).  On the following day, November 20, 2012, the trial court called Cause Number 1289808D and, in the presence of Appellant, his counsel, and counsel for the State, specifically modified Appellant's sentence to twenty years' confinement for the theft offense in Cause Number 1289808D, to run concurrently with the aggravated robbery sentence in Cause Number 1274489D.

## DISCUSSION

Appellant raises two issues on appeal.  Appellant filed a single brief in support of his appeal of both Cause Numbers 1274489D and 1289808D.

In Issue One, Appellant claims the trial court's correction of the illegal sentence in Cause Number 1289808D was not the proper remedy because it did not return Appellant to his pre-plea position.  *See Ex parte Sims,* 868 S.W.2d 803, 804 (Tex.Crim.App. 1993), *overruled on other grounds by Ex parte McJunkins,* 954 S.W.2d 39, 41 (Tex.Crim.App. 1997).  Appellant also directs us to *Ex parte Broadway,* in which the Court of Criminal Appeals asserted that an open plea may be considered a type of bargain when a defendant waives his rights in exchange for the State's consideration.  *Ex parte Broadway,* 301 S.W.3d 694, 697 (Tex.Crim.App. 2009).

Appellant entered an open plea to the court and did not have an agreement with the State to recommend a reduced sentence, as in a plea bargain, or any "bargain of a different sort" with

---

[3] Appellant filed his motions for new trial on December 17, 2012.

the State as set out in *Ex parte Broadway*. *See Ex parte Broadway*, 301 S.W.3d at 697. Because Appellant entered an open plea and did not enter into a plea bargain, he need not be returned to his pre-plea position as the trial court retained jurisdiction to correct the illegal judgment. *See also Meineke v. State,* 171 S.W.3d 551, 555, 558 (Tex.App. – Houston [14th Dist.] 2005, pet. ref'd); *Ware v. State*, 62 S.W.3d 344, 353-54 (Tex.App. – Fort Worth 2001, pet. ref'd)(trial courts have jurisdiction until the appellate record has been filed in the court of appeals).

Appellant additionally asserts that he should be returned to his pre-plea position in both this case and Cause Number 1274489D because both cause numbers were part of the same "illegal" sentencing hearing. As Appellant has failed to present argument or authority in support of this contention, it is waived. TEX. R. APP. P. 38.1(i); *see Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004)(when appellate issue is unsupported by argument or lacks citation to record or legal authority, nothing is presented for review).

Appellant filed a post-brief letter of authorities citing Texas Code of Criminal Procedure Article 42.09, section 1 and *State v. Aguilera*, in support of his contention that the trial court was not authorized to modify his sentence in Cause Number 1289808D on the day after the assessment of his initial sentence because his sentence commenced on the day it was pronounced. TEX. CODE CRIM. PROC. ANN. art. 42.09, § 1 (West Supp. 2014); *State v. Aguilera*, 165 S.W.3d 695, 698 (Tex.Crim.App. 2005). We disagree with Appellant's contention and find Appellant's reliance upon *Aguilera* to be misplaced. *Aguilera* involved the timely modification of an authorized sentence imposed on the same day that the initial sentence was imposed before the trial court adjourned for the day. *See Aguilera*, 165 S.W.3d at 696, 698. In *Aguilera*, the Court of Criminal Appeals differentiated the *Aguilera* facts from those presented in *Harris. v.*

4

*State*, wherein the Court determined that a trial court's second attempt to orally sentence a defendant violated Double Jeopardy principles. *See Harris v. State*, 153 S.W.3d 394, 395-96 (Tex.Crim.App. 2005). As the Court of Criminal Appeals noted, the issue in *Harris* was not whether the written judgment of the trial court was false or in error. *Id.* at 395. Rather, in *Harris*, the trial court had failed to specifically find the enhancements presented by the State to be true when it pronounced its original sentence, resulting in the trial court's imposition of an authorized sentence for an un-enhanced offense. *Id.* at 395-96. Consequently, the Court of Criminal Appeals determined that the trial court's second sentencing of Harris on the day following its original oral pronouncement of an *authorized* sentence violated Harris' rights under the Double Jeopardy Clause. *Id.* at 397.

In *Harris*, the Court of Criminal Appeals differentiated the facts there from those of *Cooper v. State*, where the trial court had erroneously sentenced Cooper to four years for an offense which carried a minimum five-year sentence. *Cooper v. State*, 527 S.W.2d 898, 898 (Tex.Crim.App. 1975). Three days after the initial sentence was imposed, the trial court held a hearing and, in the presence of Cooper, his counsel, and the State, noted that it had erroneously sentenced Cooper below the statutory minimum sentence. *Id.* The trial court then assessed a valid punishment, entered judgment, and pronounced sentence. *Id.* Because the original sentence was void, the Court of Criminal Appeals determined "the trial court acted properly and within [its] authority in assessing a lawful punishment at the subsequent hearing, and in pronouncing sentence based on such punishment." *Id.* at 899.

A trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence. *Mizell v. State*, 119 S.W.3d 804, 806

5

(Tex.Crim.App. 2003)(also observing that there has never been anything in Texas law that prevented *any* court with jurisdiction over a criminal case from noticing and correcting an illegal sentence). The State notes that the proceedings in the trial court are suspended only after the record on appeal has been filed in the appellate court, unless otherwise provided by law or the Rules of Appellate Procedure. TEX. R. APP. P. 25.2(g). The trial court modified its pronouncement of the illegal sentence in Cause Number 1289808D by pronouncing a legal sentence in the presence of Appellant, his counsel, and the State on November 20, 2012, which was one day after the initial sentence was pronounced and before the appellate record was filed. The appellate record does not show that the trial court was otherwise without jurisdiction to act in this manner. We conclude the trial court's modification of Appellant's void sentence in Cause Number 1289808D was proper and occurred while the trial court had jurisdiction of the case. Issue One is overruled.

In Issue Two, Appellant claims his sentence in this case constitutes cruel and unusual punishment, violating his constitutional rights.

As a general rule, punishment is not cruel and unusual if it falls within the range of punishment established by the Legislature. *Jackson v. State,* 680 S.W.2d 809, 814 (Tex.Crim.App. 1984); *Harris v. State,* 656 S.W.2d 481, 486 (Tex.Crim.App. 1983); *Dale v. State,* 170 S.W.3d 797, 799 (Tex.App. – Fort Worth 2005, no pet.). A narrow exception to this general rule is recognized when the sentence is grossly disproportionate to the offense. *Dale,* 170 S.W.3d at 799, *citing Harmelin v. Michigan,* 501 U.S. 957, 1004–05, 111 S.Ct. 2680, 2706–07, 115 L.Ed.2d 836 (1991)(Kennedy J., concurring); *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3009–11, 77 L.Ed.2d 637 (1983); *McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.),

*cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992).

Generally, sentences falling within the prescribed statutory limitations are not considered cruel and unusual punishment within the meaning of either the United States or Texas Constitution. *Harris,* 656 S.W.2d at 486; *Kim v. State*, 283 S.W.3d 473, 475 (Tex.App. – Fort Worth 2009, pet. ref'd); *Dale*, 170 S.W.3d at 799. Only in exceedingly rare cases may a sentence within the statutorily-prescribed range be proven to be out of proportion to the crime and violate the Eighth Amendment. *Solem,* 463 U.S. at 288-90, 103 S.Ct. at 3008–09. The objective criteria for assessing such claims include the (1) gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same offense in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3010–11.

After the Supreme Court's decision in *Harmelin,* a question arose whether the Eighth Amendment did or did not prohibit disproportionate sentences in non-death penalty cases. The Fifth Circuit concluded in *McGruder* that proportionality analysis survived *Harmelin* but *Solem* did not. *McGruder,* 954 F.2d at 316. The Fifth Circuit determined that *Harmelin* required a reviewing court to initially make a threshold comparison of the gravity of the defendant's offenses against the severity of his sentence. *Id.* Only if the reviewing court finds that the sentence is grossly disproportionate to the offense will it consider the remaining *Solem* factors and compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. *Id.*

Theft of property of an elderly person, when the value of the property is more than $20,000 and less than $100,000, carries a statutory punishment range of two to twenty years.

7

TEX. PENAL CODE ANN. § 12.33 (West 2011). The twenty-year sentence assessed by the trial court in this case falls within the statutory range of punishment. Therefore it is generally not considered to amount to cruel or unusual punishment. *Harris,* 656 S.W.2d at 486; *Kim*, 283 S.W.3d at 475.

In support of his contention that his sentence may be categorized as cruel and unusual despite falling within the statutory guidelines, Appellant notes that he had no prior criminal history, no one was seriously injured during his commission of the offenses, Earl had expressed a willingness to allow him to repay the theft amount, and he suffered from post-traumatic stress disorder at the time of the offense.

We will first consider the threshold comparison of the gravity of the offense against the severity of the sentence. The gravity of the offense is determined by evaluating the harm caused or threatened and the offender's culpability. *Dale,* 170 S.W.3d at 800.

Appellant entered an open plea to the indicted offense of theft of an elderly person, whereby Appellant unlawfully appropriated, by acquiring or otherwise exercising control of more than $60,000 from Earl, his wife's elderly grandfather. We observe that $60,000 is not an insubstantial sum of money. Earl refrained from initially reporting the theft offense to the police because Appellant promised to pay back the stolen money. Earl cared for his wife who suffered from Alzheimer's disease and had permitted Appellant to live in his home. The trial court noted that Earl was a family member who had helped Appellant. In sentencing Appellant, the trial court stated that it considered those factors as well as Appellant's military record and the fact that Appellant suffers from post-traumatic stress disorder, but noted that "overall, the circumstances of this particular case are heinous and egregious."

8

The twenty-year sentence assessed by the trial court is the maximum permitted punishment for this offense.  TEX. PENAL CODE ANN. § 12.33 (West 2011).  However, under the facts of this case, we are unable to conclude that the sentence is grossly disproportionate to the severity of the offense.  Consequently, it is unnecessary to consider the remaining *Solem* factors.  Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


ANN CRAWFORD McCLURE, Chief Justice

September 30, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

(Do Not Publish)