NUMBER 13-06-399-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 
 


BRUCE LEE MENDIOLA, 
Appellant,


v.



THE STATE OF TEXAS, 
Appellee.

 
 

On appeal from the County Court 

of Wharton County, Texas

 
 

MEMORANDUM OPINION


Before Chief Justice Valdez, Justices Garza and Vela


Memorandum Opinion by Justice Vela



 After appellant, Bruce Lee Mendiola, pleaded guilty to misdemeanor assault, the
trial court sentenced him to one year in the county jail, probated for eighteen months,
assessed a $500 fine, and ordered him to complete eighty hours of community
service. Pursuant to a motion to revoke, the trial court revoked appellant's community
supervision and sentenced him to nine months in the county jail. By one issue,
appellant complains the trial court abused its discretion in revoking his community
supervision when it found that he failed to: (1) pay the $215 balance of his
community-supervision fees; (2) pay the $100 balance of his fine; and (3) perform the
remaining seventy-two hours of community service. We affirm.

I. Motion to Revoke


 The relevant terms and conditions of appellant's community supervision required
him to: (1) "COMPLETE 80 HOURS OF COMMUNITY SERVICE RESTITUTION at a
task assigned by the CSCD officer without compensation;" and (2) "PAY THE
FOLLOWING: 1. COMMUNITY SUPERVISION FEE: $40.00 PER MONTH beginning
thirty (30) days from the date of this order and every month thereafter to CSCD;" and
(2) "FINE OF $ 500.00 payable at $ 50.00 per month until paid in full, to be paid
through the Wharton County Clerk's office, beginning sixty (60) days from the date
of this order[.]" The motion to revoke, filed on May 4, 2006, alleged, in relevant part,
that appellant violated the terms and conditions of his community supervision: (1) "IN
THAT THE DEFENDANT FAILED TO WORK CSR HOURS AS INSTRUCTED OF 80
HOURS AND OWES A BALANCE OF 72 HOURS;" (2) "IN THAT THE DEFENDANT
FAILED TO PAY SUPERVISION FEES AS INSTRUCTED OF $720.00 AT $40.00 PER
MONTH AND OWES A BALANCE OF $215.00:" and (3) "IN THAT THE DEFENDANT
FAILED TO PAY FINE AS INSTRUCTED OF $500.00 AND OWES A BALANCE OF
$100.00." 

 At the revocation hearing, appellant's probation officer, Linda Kerzee, testified
that appellant was placed on probation on October 6, 2004. She said he had not paid
$100 of his $500 fine, $215 in community-supervision fees, and had performed only
eight hours of the required eighty hours of community service. In order for appellant
to complete his community-service hours, and in order for him to pay his fine and
community-supervision fees, Ms. Kerzee extended his community-supervision period
for ninety days. She stated that during the ninety-day extension, appellant performed
five hours of community service, leaving a balance of seventy-two hours. She testified
that appellant was not worthy of another extension of his community-supervision
period.

 On cross-examination, she testified that appellant was ordered to pay a $500
fine payable at $50 per month until paid in full. With regard to his community-service
hours, she said appellant was to "Complete 80 hours of community service at a task
assigned by the CSCD officers without compensation." When defense counsel asked
her, "And that completing the 80 hours of community service has no specification as
to how many were to be done a month or in what time period just during the period
of the probation?", she replied, "That is correct. They have until, as per Judge Murrile,
we give them six months to get it done, but as per the order they have to the end of
the probation to complete it and we extended the probation to give [appellant] extra
time to complete the hours."

 Appellant testified he was laid off his job six months into his probationary
period. (1) At the time he was laid off, he had no other source of income and lived in El
Campo with his mother. He stated that he had a wife and child but could "[n]ot really"
contribute to their support. With regard to the payment of his fine, community-supervision fees, and the completion of his community-service hours, defense counsel
asked appellant:

 Q. So, the bottom line is, Mr. Mendiola, on these fees and the fine,
during the term of probation, did you have the money to pay them?


 A. No, sir, I didn't have the money.


 Q. You were unemployed; is that correct?


 A. Yes, sir.


 Q. And on the fine, I see they've alleged that you paid $400 of the 500;
is that correct?


 A. Yes, sir.


 Q. Did you have the other money, the other hundred dollars to pay the
remaining hundred dollars or not?


 A. No, sir.


 Q. And on the supervisory fees, did you pay--you paid some on the
supervisory fees, didn't you?


 A. Yes, sir.


 Q. But there is a balance of $215. Did you just have the money to pay
that?


 A. I didn't have the money.


 Q. And as far as your community service hours, you did do some hours
here; is that correct?


 A. Yes, sir.


 Q. And what was your problem on doing the other hours? Did you have
a driver's license during this time?


 A. No, sir.


 Q. Had your driver's license been revoked?


 A. Yes, sir.


 Q. With your--did you have any way to get around or get to places?


 A. No, sir.

 After the prosecutor and defense counsel finished questioning appellant, the trial
judge questioned appellant as follows:

 Q. How did you pay the fines and the fees here? You have payments on
March, April, June, of 2005 and in September?


 A. Washing cars and mowing yards.


 Q. How did you get--do you wash cars at your house?


 A. No, sir, at the car wash.


 Q. How did you get to the car wash?


 A. Sometimes my sister dropped me off, sometimes I had to walk.


 Q. She couldn't take you to do your community service?


 A. No, sir.


 Q. Did your mother have a driver's license?


 A. Not that I know of.


 Q. And your sister.


 A. Yes, sir.


 Q. Where does your sister live?


 A. She stays in Wharton.


 Q. But she could pick you up to make money, but she couldn't pick you
up to do your obligations with your probation officer?


 A. Not a everyday thing, just when she had time. She had three kids.


 Q. Well, it was three days of the week that you could do community
service.


 A. Yes, sir.


* * *


 Q. Probation gave you another 90 days to complete your deficiencies,
didn't they?


 A. Yes, sir.


 Q. Did you do any community service within that 90 days?


 A. No, sir.


 Q. And you couldn't find one day out of 12 days out of the month that
your sister couldn't bring you to Wharton to do community service; is
that correct?


 A. Yes, sir.


 Q. But she could take you to make money.


 A. Yes, sir. I got a little girl.




II. The Revocation Judgment


 After hearing the evidence, Judge John Murrile, Presiding Judge of the County
Court of Wharton County, signed the "JUDGMENT REVOKING COMMUNITY
SUPERVISION: SENTENCE TO WHARTON COUNTY JAIL." The judgment showed
that the conditions of community supervision which appellant violated were: 
"FAILURE TO PAY FINE IN FULL: FAILURE TO COMPLETE COMMUNITY SERVICE
RESTITUTION; FAILURE TO PAY FEES IN FULL." 

III. Applicable Law & Analysis


 When reviewing an order revoking community supervision, the only question
before this Court is whether the trial court abused its discretion. Rickels v. State, 202
S.W.3d 759, 763 (Tex. Crim. App. 2006); Jackson v. State, 645 S.W.2d 303, 305
(Tex. Crim. App. 1983); McDonald v. State, 608 S.W.2d 192, 199 (Tex. Crim. App.
1980). In a revocation proceeding, the State must prove by a preponderance of the
evidence that appellant violated a condition of community supervision. Cobb v. State,
851 S.W.2d 871, 874 (Tex. Crim. App. 1993). 

 In the context of a revocation proceeding, preponderance of the evidence means
that greater weight of the credible evidence which would create a reasonable belief
that the accused has violated a condition of his or her community supervision. 
Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). One sufficient
ground for revocation will support the trial court's order to revoke community
supervision. Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); Cochran
v. State, 78 S.W.3d 20, 28 (Tex. App.-Tyler 2002, no pet.); Greathouse v. State, 33
S.W.3d 455, 458 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd). If the State fails
to meet its burden of proof, the trial court abuses its discretion in issuing the order to
revoke. Greathouse, 33 S.W.3d at 458; Reid v. State, 834 S.W.2d 125, 126 (Tex.
App.-Houston [1st Dist.] 1992, no pet.). 

 In conducting this review, we are to view the evidence in the light most
favorable to the trial court's order. Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim.
App. 1981); Jones v. State, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979). The trial
court is the sole trier of facts, of the credibility of the witnesses, and of the weight to
be given their testimony. Diaz v. State, 516 S.W.2d 154, 156 (Tex. Crim. App.
1974); Galvan v. State, 846 S.W.2d 161, 162 (Tex. App.-Houston [1st Dist.] 1993,
no pet.); McFarlin v. State, 661 S.W.2d 201, 203 (Tex. App.-Houston [1st Dist.]
1983, no pet.).

 At the revocation hearing, appellant's probation officer, Linda Kerzee, testified
appellant was to have completed eighty hours of community service during his
probationary term and that she gave him an additional ninety days to complete his
community-service hours. She testified appellant completed only eight hours, far short
of the eighty hours. Appellant acknowledged he did not complete the community-service hours. Although appellant initially testified his failure to complete the
requirement was due to his lack of a driver's license, he later admitted his sister had
driven him to work. After he lost his job six months into his probationary term, he
earned money by washing cars and mowing yards.

 Based on the testimony offered at the hearing, the trial court concluded that
appellant had been capable of performing the required eighty hours' community
service, despite his lack of a driver's license. The State proved by a preponderance
of the evidence that appellant did not complete the required eighty hours.

 Appellant argues that article 42.12, section 21c of the Texas Code of Criminal
Procedure should apply to a community-supervision revocation hearing at which the
State alleges a defendant violated the conditions of community supervision by failing
to complete community-service hours. Article 42.12, § 21c provides:

 In a community supervision revocation hearing at which it is alleged only
that the defendant violated the conditions of community supervision by
failing to pay compensation paid to appointed counsel, community
supervision fees, court costs, restitution, or reparations, the inability of
the defendant to pay as ordered by the judge is an affirmative defense to
revocation, which the defendant must prove by a preponderance of
evidence.


Tex. Code Crim. Proc. Ann. art. 42.12, § 21c (Vernon 2006). Appellant has not cited,
and we are unable to find, any case law applying this statute as an affirmative defense
to a defendant's failure to either complete or perform community-service hours. 
Assuming, without deciding, that this statute does apply as an affirmative defense to
a defendant's failure to either complete or perform community-service hours, appellant
has failed to establish by a preponderance of the evidence his inability to complete the
community-service hours. He was able to work at washing cars and mowing yards. 
Even though he had no driver's license, he testified that he sometimes walked to his
job and that his sister had driven him to work on some occasions. Although appellant
asserted inability to pay as a justification for failing to pay the balance of his fine and
community-supervision fees, the evidence does not show that his completion of
community service required financial resources. Accordingly, appellant has failed to
establish by a preponderance of the evidence his inability to complete the eighty hours
of community service.

 Viewing the evidence in the light most favorable to the trial court's order, we
cannot say the trial court abused its discretion in revoking appellant's community
supervision. We overrule the sole issue for review.

 We affirm the trial court's order revoking community supervision. 

 

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 1st day of November, 2007.
1. Ms. Kerzee testified, and the judgment showed, that appellant was placed on community
supervision on October 6, 2004. Accordingly, six months into his probationary period would be April
6, 2005.